All of you patent people have had some great tutorial on tax laws. May it please the Court, Deanne Maynard for Sandoz and I'm also presenting argument for the other Rule 60B move-in. The District Court legally erred in denying the Rule 60B motion here. Sandoz amended it as it had a regulatory right to do under Section 8 to carve out the only claim held valid by this Court in the previous appeal. And then Sandoz did precisely what this Court has instructed parties in our situation to do, which is make a motion to clarify or modify the injunction that the design around fell outside the limits of that injunction. Is that when the injunction is somehow vague? We're not really sure what it covers or doesn't cover? Well here, Your Honor, it's not limited to that. I think that any time that you have been adjudicated an infringer and you believe you have designed around that limitation, this Court's instruction in PIVO is that you may go back, and in fact you should go back, and not launch at risk of contempt. Go back to the District Court that issued the injunction and ask them to hold that your redesigned product is outside the scope of the previous injunction because it's more than cuddly different than the litigated product. But that's not actually what you did. I mean, that's not actually what occurred. Going under 60B is saying that we want you to set aside your earlier judgment based on our own affirmative act. That's very different than going in with a motion saying in order to protect ourselves from a contempt citation, we ask that the Court hold a hearing to clarify the scope of the injunction and whether we fall within it. Well, several points in response to that, Judge O'Malley. First, in the context of Hatch-Waxman, because the FDA, because there's a provision in the injunction that says the FDA can't approve the ANDA that was litigated, we need to go back to the District Court. We can't just launch at risk. So the only option is to go back and ask the District Court to clarify the injunction. The terms of the injunction are that it applies to the products as described in ANDA number so-and-so. And it limits the effective date of ANDA number so-and-so until X date. You're not answering my question. Sorry. That's not what you did, though. You didn't go back and ask for a clarification of the scope of the injunction and for a determination of whether you fell within. You asked for under 60B that the judgment be set aside. With respect, Your Honor, that's not correct. What we asked for with respect to the Section 8 carve-out is that the injunction be clarified or modified, but the procedural mechanism that you used was 60B. And the release that you get under 60B is to have the judgment set aside. Under 60B-5, the judgment, as it currently says, the injunction, so 60B-5, the Supreme Court has recognized, is the power of the District Court to modify prospective relief in particular, as here, an injunction going forward when circumstances have changed such that it's no longer equitable and have it apply. So 60B-5 is an appropriate office here to use to go back and say, as we did in our motion, and our motion is in the joint appendix starting at A73-69, to clarify the motion. I'm sorry, the complete motion is at A78-69, the amended motion. There is no provision in 60B-5 to start off the judgment that says you can't do it because of actions of your own. That's not in the rule. But all the case law that interprets it says that that's the case. Those words are often announced, but it isn't true that that is an inherent limit in the rule. Because take for one example that the Court is familiar with, like in Bancorp, in USC Bancorp, when parties settle and they want to ask the District Court judge to vacate the judgment in light of the settlement, and sometimes it's even conditioned on that, the U.S. Supreme Court in Bancorp said the appropriate thing to do in that situation is to use a 60B-5 motion to go back and ask the District Court for relief. But of course, that settlement is obviously the parties doing, and it doesn't mean, it just isn't so that it's an ironclad rule that there's no... The Supreme Court suggested that courts ought to be pretty stingy about granting that kind of motion though, right? That's true, Your Honor. That's certainly true. But here, this is different than that, right? This is... Like mootness versus happenstance versus mootness versus the party's own voluntary action. They did, Your Honor. Yes, I agree with you. That's true. In that context, they said you should be stingy in doing it when parties have settled. But for a different public policy, that's not an issue here, the public policy of finality and judicial efficiency. Here, the public policies favor our doing this. In PIVO, this court said, this is what you should do, and under the patent law, designer rounds are favored. So we litigated our case as we had a right to do. We thought we had strong invalidity challenges to these patents so that we could launch the full scope of their patented claim. We lost in this court on claim four, one method of use patent. We went back to the FDA, that is our regulatory right, and used Section 8 to carve out the only infringing method claim that's been held to be valid. They don't get a 30-month stay in a Section 8 carve out as a usual matter. So we've done no end run around Hatch-Waxman. This is completely consistent with Hatch-Waxman. The Supreme Court in Novo Nordisk explains the two different paths. Section 8, where you're essentially acknowledging their patent rights and saying we're not going to market for that use. We're not going to market for that use. Or Paragraph 4, where we're saying it's invalid or not infringed, and then you challenge, and that's when they get the 30-month stay. Well, they already got their 30-month stay. The DJ action here would also be consistent with Hatch-Waxman, right? Well, right now, we're in the odd situation, Judge Chin, because we litigated all of our patents in this court, but the court didn't decide the two of them, that we need those other two patents held invalid. So there were two pieces to our motion, Judge O'Malley. One was, we've carved around, we've designed around, we've carved out. Please state that our injunction, that our carve-out, is more than probably different than what was adjudicated to infringe, and therefore, we're not covered by this injunction and the FDA can approve our carve-out. If the judge were to do that, that would then remove the premise of this court's decision that the other two patents validity did not need to be decided. And then, so we ask, do that, and then also decide the two undecided patents, because they are invalid for the same reasons that this court held the 463 patent invalid. Even if we agreed with you that somehow this could fall properly under a 60B motion, and that that was procedurally the appropriate motion for you to make, because again, the prior judgment, how could we possibly reach the merits of your argument in this appeal? Well, on your first point, there are 60B motions to modify and clarify. It doesn't mean setting, it isn't limited just to setting aside. It's a broad office of district courts, district courts have broad discretion to act as appropriately with respect to their ongoing injunctions. And it doesn't just mean that they have to wipe their injunction away, it can just mean that they have to modify or clarify. But we would like for this court to rule that our product is more than colorably different, and that based on your previous rationale, holding the 463 patent claims invalid, the two undecided patents are also invalid, but at the very least, we would request that you remand, because the district court kicked us out at the threshold. It thought it lacked jurisdiction to decide our motion, and that is clearly erroneous as a matter of law. It's a question of, under TEVO, it's a question of patent law, whether or not a redesigned product is more than colorably different. And a 60B motion is, and so in Latrim, Judge O'Malley, that was a 60B motion that was made in the district court, asking the district court to decide grounds for judgment as a matter of law that had been denied initially by the district court as moot, but were no grounds, because the other party had appealed and prevailed on the grounds that had prevailed initially in the district court. And this court held, the district court refused to do it, but this court reversed and held in Latrim, no, 60B is the right way to do that. And what other motion could we make? Where else would we go? I mean, the judicial system should want us to go back. In fact, it does. That's one of the purposes of Rule 60B, go back to the district court, issue the injunction Hypothetically, if we were to say, district court did not abuse its discretion in denying your 60B motion, then what happens to you, your clients? How do you operate next? What are your next moves? At the risk of irritating your honor by fighting your hypotheticals, the district court erred as a matter of law in thinking it didn't have authority to decide our motion, and that is de facto an abuse of discretion, because it applied the wrong rule of law. Taking your hypothetical. That was the part on ruling on the validity of those two other patents though, right? Well, no, your honor. It was on the whole thing? Well, certainly, he erred as a matter of law on both things. The district court concluded it lacked jurisdiction in correcting the validity of the other two unassided patents, yes. But he would say, I have no jurisdiction to answer this question about the claim for amendment, or the amendment to the amendment. He didn't say that, but the rule he applied was inconsistent with this court's decision in Tevo. So he looked at Fifth Circuit law and said, as a matter of Fifth Circuit law, because this is of your own doing, you can't come here and ask me to clarify the injunction to say that you're outside the terms of that injunction. Under Tevo, it's a question of Federal Circuit law. But Tevo is a situation where there was actually a contempt finding, and the question was the authority of the court to address issues in the context of a contempt proceeding. That's not the same as 60B. The application of 60B would have to be under regional circuit law. With respect, Your Honor, I disagree with both pieces of that. So on the first piece, yes, he's accurately described the fact that Tevo was about contempt. But what the court said is the mistake that Echo Star had made is that Echo Star should have gone back to the district court. It shouldn't have just launched its product. It should have gone back to the district court and asked it to clarify or modify its injunction before launching its product, if it wished to get clarity about the meaning of the injunction. That's what we've done here. And I submit that if Echo Star had done that, the right way to have done that would have been through a Rule 60B motion. And now, I'm sorry, I've forgotten your second question. Oh, Fifth Circuit law. No, so under this court's case law, and there are several cases, was our cap one is one, it cites other cases within it, where this court has held that when a 60B motion presents a question of patent law, it's this court's law that applies, not regional circuit law. All the cases that they cite for the proposition that this court applies regional circuit law involve questions that don't involve particular questions of patent law. But whether a redesigned product is more than colorly different than an already adjudicated project, Tevo says is a question of patent law. Can we go back to a question that, I don't know, got lost because I stacked another question on top of it before. And that question was, what situation is Sandoz left in and what it needs to do next in order to ultimately get approval for its amended ANDA if this court were to refer? It isn't clear what we can do, Your Honor. We've done what we think this court has instructed parties to do as to both pieces of it. We've gone back to the FDA. The FDA has accepted our amended ANDA, tentatively approved our amended ANDA, so it hasn't said this isn't the way to do this as far as the FDA is concerned. But right now we have this injunction because of the two undecided patents, we have this injunction from the district court running through these two undecided patents. So I'm sure we'll put our heads together and try to figure out what to do if we lose here, but I think we've followed this court's instructions about what to do in this situation and that what we're doing is completely consistent with the policies of patent law and the policies of the Hatch-Waxman Act. We're acknowledging their patent rights to claim for. Right. I'm just trying to figure out if you believe that you're forever barred from ultimately ever trying to get finality on the question of validity of those other two patents if you don't get the belief that you're speaking today. We're certainly not forever barred in a legal sense because it wasn't decided by this court. Right. And so to treat that as res judicata or collateral estoppel against us would be, I think would be wrong. One thing that's really clear from this court's opinion is that you didn't decide the validity of those patents and the district court in some ways is treating it like you affirmed. But this is the most straightforward way. This is why we did this. This is the most straightforward way for us to address the situation that we're in given these facts that we have designed around the patent, the patent claim is valid, and that we still have these other two undecided patents out there. Okay. Why don't we restore two minutes of rebuttal and why don't we hear from Mr. Schoen. Thank you. Thank you, Judge Schoen. Good morning and may it please the court, Jonathan Singer for Allergan with me today is Deanna Reichel. Judge Schoen, I want to pick up on your question. What is the appropriate court to affirm? What would or could happen? We've said it in our brief. There are multiple options for Sandoz to pursue that are consistent not only with Federal Rule Procedure 60B-5 as applied by all the circuits, but also with the Hatch-Waxman Act. The problem here fundamentally is we have a situation where someone has changed. They filed an amendment to their ANDA and changed the conditions of use. The authorities say they're supposed to issue a new paragraph 4 notice to the branded applicant and the patent holder so that we start again. It's what happened in the Abbott versus Torfarm case was another and a file, then another case that began, and they, for whatever reason, inexplicably refused to do that. We are 19 months since the amendment they filed was given to the FDA. The statute tells us that typically you're supposed to give notice to the patent holder within 20 days of that change to your ANDA, and then we have our 45-day period to file suit. To be honest, we could have litigated this entire issue in the 19 months that it occurred. They are pursuing this. Let's be clear why they're pursuing this, because it's a windfall. If you apply the TiVo standard, a not colorably different, which I think is not appropriate here, if you apply that, it's a windfall to the generic applicant. We litigated a case, we won, we showed infringement on a preponderance of the evidence standard. The more than colorably different inquiry under contempt requires us to show by clear and convincing evidence that it's not, I always get this confused, not more than colorably different. It's confusing. I think everybody does that. But whatever the formulation, that's what we're required to show. And if they show that it is different enough such that a contempt proceeding would be inappropriate, contempt not even possible here, then the injunction is lifted without anybody ever adjudicating whether or not this infringes. That is an absolute windfall, and that is what is going on here. They were trying for a windfall as opposed to simply doing what the Hatch-Waxman Act, what other applicants in the same situation have done, which is simply give a new notice, we file a new case, which is what one would expect, and we have a new litigation. Would this generic lose their first-in-line status if they did that? I don't know whether or not they would, Judge Tan. I think, generally speaking, I think they may have already lost their first-in-line status by where they are, by failing to launch, having won on the 463 patent, is it? By having won on that patent and not launching within 75 days, I believe they would. I don't know that that is litigated, since we have authority. That is what one version of the statute says. I'm sure they have a different view as to what the statute says. But I don't think the amendment and giving the new notice, in and of itself, is a failure to launch an event either, because they would forfeit from a failure to launch. I also want to comment that it is the case consistently that the authorities from the other circuits do say that Rule 60B relief is sort of the exception. The argument we are hearing would turn it into the norm, essentially that when someone attempts to design a round that, having lost, having chosen to challenge a patent on validity and lost, and says, okay, I lost on validity, now I'm going to do a challenge on infringement, that we then have an abbreviated proceeding under Rule 60 as opposed to a new infringement case. What Thiebaud talks about is if it's not contempt. If it's not contempt, then we have a regular infringement case. This should be no different here. You can't have contempt here. The bar is on the ANDA. Filing an amendment to an ANDA is not an act of contempt. That was the Abbott v. Torfarm case. The new ANDA isn't an act of contempt. It doesn't fit the structure that they're trying to impose on the Hatch-Waxman. It doesn't work. And like I said, there are options for them to pursue. You mentioned the declaratory judgment action. I imagine that would be another one that they could pursue as well. I also did want to – I'm sorry, were you saying before that if in a contempt proceeding, a court were to determine that the amended ANDA was more than colorably distinct, then therefore the injunction would dissolve? And then immediately thereafter, Sandoz could start marketing a generic version? My understanding is that's what they're arguing, that if they can show that it's more than – not that it doesn't infringe, but simply more than colorably different, which is a different inquiry. There's the infringement inquiry. Do you have any tools in your toolkit to try to seek from the court some kind of injunction? Sure. Temporary. Sure. We would seek a preliminary injunction for the court, Judge. So I'm not saying that there are no tools for us to pursue if that is what the court determines the ultimate rule of law should be. I'm just saying that's why they're doing what they're doing as opposed to the other way. What's the other way, the normal way? Submit a new paragraph for notice to Allergan as required by the statute, and then we litigate and we prove infringement by preponderance of the evidence. There's a 30-month stay, yes. They're trying to avoid the 30-month stay. That is a benefit, no doubt, to Allergan, but it's supposed to be. That's what's supposed to be kind of the quid pro quo of the Hatch-Waxman. Lastly, I also wanted to talk about sort of the other aspect of things here, is that this was, in fact, completely voluntary. This is not a situation, we're not asking for some blanket rule here. This is not a situation where the FDA said to them, you need to change your ANDA. Or, for example, Allergan did something to its NDA, which the generic has to typically copy the NDA, and required them to change unexpectedly. This is a strategy, if you will. It's a strategy to try to avoid the prior judgment of this court and the lower court before. And then I do, we have had no discovery here. We have not had any depositions, any document production, any non-infringement contentions, any markment, anything. I do want to say, though, it does appear, from what little we know, that they are trying to do an end run around the Hatch-Waxman Act by not providing that additional paragraph 4 notice. They're telling the FDA on the one hand that they are section 8-ing one portion of our patent, but at the same time they're saying they're paragraph 4-ing the other part, on the same patent. They're not section 8-ing the whole patent. They're saying we can do simultaneously a section 8 on one indication, this glaucoma thing, but we're paragraph 4-ing this other indication, and we're maintaining our paragraph 4. They didn't tell the FDA that they now claim that even though they're still labeled the same, that they don't infringe. They never told the FDA that. They've changed... You're saying that instead of doing a continuation of the present mitigation, they need to go back to square one. Pardon me? They need to go back to square one. I won't say square one, Judge Chan. I think an amendment is proper. I simply say that they need to do another paragraph 4 notice. I apologize we didn't cite the regulatory provision. We cited the Benvenue case, which talks about changing conditions of use requiring a new paragraph 4 notice. We neglected to cite the regulatory provision which requires a new paragraph 4 notice within 20 days. Just curious, in that second round of litigation, do you agree that Sandoz could continue to pursue the validity question of those two patents that didn't finally get resolved before? I agree with my colleague on that. I think it would be awfully difficult for us to argue in a new, with the amended amendment. I think it would be difficult. I haven't studied it conclusively, but it would be quite difficult for us to argue since this court deferred that they were collaterally stopped in the context of the new amended AMDA on the challenge on the other two patents. Unless the court has any further questions, I am done. Thank you. If this court had struck all of the patents except for claim 4 on our first appeal, we could have made a Section 8, the same Section 8 amendment we've made now. We would not be required, and so we're not required now, to give them a new notice. Under Section 8, they're not entitled to a 30-month stay. This court has said as much in AstraZeneca v. Apotex 633F3 at 1046. Unlike a Paragraph 3 or 4 certification, the filing of a Section 8 statement will not by itself delay approval of an AMDA. The Supreme Court's decision in Novo Nordisk explains the two different routes, and when you do a Section 8 paragraph, you don't have to start again. There's no new 30-month stay, and there's no need to give notice. The regulations don't require notice of a Section 8 carve-out. We are still maintaining our Paragraph 4 because there are these two patents that weren't decided, and so we need those struck down. What we're proposing is extremely more efficient than what they're proposing. What about the fact that you could have had this all litigated before getting to this point, if you had filed another Paragraph 4? It would have been protected against any contempt argument. I don't know why one would think that route would be faster than this, starting all over again, putting the FDA through an entirely new AMDA, and then starting all over again with a suit where we've already litigated the one patent. We think the other two patents fall as a matter of principle under this Court's first decision. They've already been fully litigated. There's nothing left to litigate, and there are remedies in the section. Well, you could have made that argument in the new law suit. You could have said, Judge, look, we've got this whole record. Just incorporate the earlier record, and we can proceed from there. But we're before a district court judge already where this suit went back to, where there's another suit pending. And to one of the questions you're asking me, Judge O'Malley, the title of Rule 6cB is relief from a judgment order. It doesn't mean that you're going to undo the entire judgment. There are plenty of cases in the Supreme Court where it's talking about modification, clarification of ongoing decrees, not simply wiping them out. So it is a broad power of district courts to do that. What we're doing here is more efficient, and it makes sense. It's consistent with the patent policy of encouraging those who have been found to infringe to try to modify their product to get on the market with something else. And what we're trying to do is market a non-infringing product that would be a cheaper drug to provide benefit to patients who have ocular hypertension and that won't infringe the only valid patent. We would ask that this court hold that our amended ANDA is more than colorably different and that the two other patents fall for the rationale in your first opinion, or at the very least to remand to the district court to ask it to do so. Thank you. Thanks both counsel. The case is submitted.